Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CALICE,<br><br>            Plaintiff,<br><br>      v.<br><br>VICAL INCORPORATED, R. GORDON DOUGLAS, RICHARD M. BELESON, GARY A. LYONS, ROBERT C. MERTON, GEORGE J. MORROW, VIJAY B. SAMANT, and THOMAS E. SHENK,<br><br>            Defendants. | Case No. **'19CV1437 LAB WVG**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Michael Calice ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1. This action is brought by Plaintiff against Vical Incorporated ("Vical" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Vical will be acquired by Brickell Biotech, Inc. ("Brickell") through Vical's wholly owned subsidiary Victory Subsidiary, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On June 3, 2019, Vical and Brickell issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated June 2, 2019 (the "Merger Agreement") to merge Brickell and Vical in an all-stock transaction. Pursuant to the terms of the Merger Agreement, existing Vical stockholders will own 40% of the combined company and Brickell stockholders will own 60%, based on a $40 million valuation for Vical and a $60 million valuation for Brickell.

3. On July 12, 2019, defendants filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Vical stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Vical's financial projections relied upon by the Company's financial advisor MTS Securities, LLC ("MTS") in its financial analyses; and (ii) the data and inputs underlying the financial analyses that support the fairness opinion provided by MTS. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Vical stockholders need such information in order to make a fully informed decision whether to vote their shares in favor of the Proposed Transaction.

4.     In short, unless remedied, Vical's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Vical is incorporated in Delaware and is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Vical.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

9. Defendant Vical is a Delaware corporation and maintains its principal executive offices at 10390 Pacific Center Court, San Diego, California 92121. Vical's common stock is traded on the Nasdaq Capital Market under the ticker symbol "VICL."

10. Defendant R. Gordon Douglas ("Douglas") is Chairman of the Board and has been a director of the Company since May 1999.

11. Defendant Richard M. Beleson ("Beleson") has been a director of the Company since May 2013.

12. Defendant Gary A. Lyons ("Lyons") has been a director of the Company since March 1997.

13. Defendant Robert C. Merton ("Merton") has been a director of the Company since March 2002.

14. Defendant George J. Morrow ("Morrow") has been a director of the Company since October 2012.

15. Defendant Vijay B. Samant ("Samant") has been President, Chief Executive Officer ("CEO"), and a director of the Company since November 2000.

16. Defendant Thomas E. Shenk ("Shenk") has been a director of the Company since December 2015.

17. Defendants identified in paragraphs 10-16 are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

18. Brickell is a Delaware corporation based in Boulder, Colorado. Brickell is focused on developing prescription therapeutics for the treatment of debilitating skin diseases.

19. Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Vical.

## SUBSTANTIVE ALLEGATIONS

**Company Background and the Proposed Transaction**

20.   Vical develops biopharmaceutical products for the prevention and treatment of chronic or life-threatening infectious diseases.  Until recently, the Company was focused on developing its antifungal VL-2397 for the treatment of patients with invasive aspergillosis.  VL-2397 was being evaluated in a randomized Phase 2 clinical study to compare the efficacy and safety of VL-2397 to standard treatment for invasive aspergillosis in acute leukemia patients and recipients of allogeneic hematopoietic cell transplant.  In February 2019, Vical decided to discontinue its Phase 2 clinical trial of VL-2397 in order to conserve cash resources.

21.   The U.S. Food and Drug Administration ("FDA") has advised that VL-2397 would be eligible for a Limited Use Indication ("LUI") approval assuming a successful outcome of a single Phase 2 trial carried out in accordance with a protocol and statistical analysis plan consistent with the FDA's advice.  In the case of VL-2397, the LUI approval would be for patients for whom alternative regimens are not available to treat their invasive aspergillosis.  The FDA has granted Vical Qualified Infectious Disease Product, Orphan Drug and Fast Track designations for VL-2397 in the treatment of invasive aspergillosis.

22.   Vaxfectin is the Company's proprietary, cationic lipid formulation optimized to increase the immune response to vaccines.  Vaxfectin formulations have demonstrated safety and adjuvant activity in DNA vaccine applications in multiple animal models, including nonhuman primates.  Studies of Vaxfectin-formulated DNA vaccines against CMV and measles have shown enhanced immunogenicity in rodents and nonhuman primates.  Vaxfectin-formulated DNA vaccines have also been tested in approximately 400 healthy human subjects receiving influenza, dengue, or HSV-2 vaccines, and collectively, these Phase 1 trials indicate favorable safety profiles of these vaccines.

23.     On June 2, 2019, Vical and Brickell issued a joint press release announcing the Proposed Transaction that stated, in relevant part:

SAN DIEGO, CA and BOULDER, CO — June 3, 2019 — Vical Incorporated ("Vical") (Nasdaq:VICL) and Brickell Biotech, Inc. ("Brickell"), a privately-held clinical-stage medical dermatology company, today announced they entered into a definitive merger agreement (the "Merger") under which Brickell would merge with a wholly-owned subsidiary of Vical in an all-stock transaction. The Merger would create a pharmaceutical company focused on developing novel and differentiated prescription therapies addressing unmet patient needs in hyperhidrosis, cutaneous T-cell lymphoma, psoriasis, and other debilitating dermatologic disorders. Brickell's lead pipeline asset, sofpironium bromide, is a pivotal Phase 3-ready topical soft anticholinergic intended for axillary hyperhidrosis. Brickell's development partner, Kaken Pharmaceutical, Co, LTD ("Kaken"), has reported positive Phase 3 results in a clinical trial conducted in Japan. Upon closing of the transaction, the combined company would operate under the name, Brickell Biotech, Inc. and trade on the Nasdaq Capital Market under a new ticker symbol still to be determined.

**Proposed Transaction Details**

Under the terms of the Merger, it is anticipated that existing Vical stockholders will own 40% of the combined company and Brickell stockholders will own 60% of the combined company, in each case upon completion of the Merger and subject to assumptions regarding the calculation of the fully diluted shares of the parties. The ownership split is based on a $60 million valuation for Brickell and a $40 million valuation for Vical, a premium to the 30-day volume weighted average share price of Vical. The actual allocation between the two groups of stockholders is subject to adjustment based on Vical's and Brickell's respective net cash and net working capital balances prior to the completion of the Merger. The transaction has been approved by the boards of directors of both companies and the required percentage of stockholders of Brickell needed to approve the transaction. The Merger is anticipated to close in the third quarter of 2019, subject to customary closing conditions, including approval of the Merger by the stockholders of Vical, and the satisfaction of the closing conditions to the Funding Agreement (described below).

\* \* \*

An affiliate of NovaQuest Capital Management, LLC ("NovaQuest") has committed up to $25 million in near-term research and development funding to Brickell following the closing of the Merger (the "Funding Agreement"). Immediately following the closing of the Funding Agreement, the combined company will issue a warrant to NovaQuest to purchase shares of Vical common stock in an amount based on 10% warrant coverage on the $25 million funding commitment and the exchange ratio for the Merger. The combined company intends to use proceeds from NovaQuest, in addition to Vical's cash balance expected to be approximately $35 million at the closing of the Merger, to primarily fund the development of sofpironium bromide through Phase 3 clinical trials in axillary hyperhidrosis.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

"We are excited about the opportunities created by this Merger as we expect it to provide us with the funding to complete our two planned pivotal Phase 3 trials of sofpironium bromide in patients axillary hyperhidrosis, with topline data expected in Q4 2020," explained Robert B. Brown, Chief Executive Officer of Brickell. "In addition, the strong closing balance sheet would allow Brickell to further develop our key pipeline assets for the treatment of other skin diseases."

**The Proxy Statement Contains Numerous Material Misstatements or Omissions**

24. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Vical's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

25. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Vical's financial projections relied upon by the Company's financial advisor MTS in its financial analyses; and (ii) the data and inputs underlying the financial analyses that support the fairness opinion provided by MTS. Accordingly, Vical stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

26. First, the Proxy Statement fails to disclose material information relating to Vical management's financial projections.

27. Specifically, the Proxy Statement sets forth that in rendering its fairness opinion, MTS "reviewed certain internal financial analyses and forecasts prepared by and provided to us by the management of Vical relating to Vical's and Brickell's business (the "Projections"), and utilized per instruction of Vical. . . ." Proxy Statement at 81. Yet, the Proxy Statement wholly fails to disclose the forecasts prepared by the management of Vical relating to Vical's business.

28. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows

stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

29.     Second, the Proxy Statement describes MTS' fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of MTS' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Vical's stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on MTS' fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Vical's stockholders.

30.     With respect to MTS' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate range of 12% to 14%; (ii) Brickell's estimated NOL balance; (iii) Vical's basis for directing MTS to apply revenue achievement factors of 75% to 125% and U.S. probabilities of success of 60% to 80%; (iv) Brickell's projected capitalization at transaction closing; and (v) clarification as to which set of Vical management Brickell projections MTS relied on in performing its analysis.

31.     With respect to MTS' *Public Trading Comparable Companies Analysis* and *IPO Comparables Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies observed by MTS in the analyses, and which set of Vical management Brickell projections MTS relied on in performing its analysis.

32.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

33.     The omission of this information renders the statements in the "Certain Vical Management Unaudited Prospective Financial Information" and "Opinion of MTS Securities, LLC" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

34.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Vical will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

35.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

36.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

37.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial

advisor. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

38. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in making a voting decision on the Proposed Transaction.

39. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

40. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

41. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of Vical within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Vical and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

45. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

46. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Vical's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: July 30, 2019

WEISSLAW LLP
Joel E. Elkins

By: _____
Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
    -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*

- 12 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS